FILED
CLERK
8/3/2015 10:40 am
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
DOMENICK STANGANELLI and
MICHELLE STANGANELLI,

                Plaintiffs,

  -against-

THE UNITED STATES OF AMERICA,
UNITED STATES DEPARTMENT OF JUSTICE,
DRUG ENFORCEMENT ADMINISTRATION,
JUSTIN ECKERT, and CHARLES E. FLUDD,

                Defendants.
----------------------------------------------------------------X
FEUERSTEIN, J.

**ORDER**
13-CV-5520 (SJF)(AKT)

On October 7, 2013, Domenick Stanganelli and Michelle Stanganelli[1] commenced this action against the United States of America ("U.S."), the U.S. Department of Justice ("DOJ"), the Drug Enforcement Administration ("DEA"), Justin Eckert ("Eckert") and Charles E. Fludd ("Fludd") under the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1) ("FTCA"), and New York state law. Docket Entry No. 1 ("Complaint" or "Compl.").[2] Plaintiff Domenick Stanganelli ("plaintiff") has moved for partial summary judgment on his claim pursuant to Section 205-e of New York State General Municipal Law ("Section 205-e")[3] [Docket Entry No. 42 ("Motion for

---

[1]     The claim of plaintiff Michelle Stanganelli is deemed withdrawn based on the April 2, 2014 letter memorializing her intention to withdraw her claim in this action. Docket Entry No. 42-4 (Affirmation of Beth S. Gereg in Support of Plaintiff's Motion for Summary Judgment ("Gereg Aff.")), Ex. D.

[2]     The action was commenced within six (6) months of the Final Agency Denial of plaintiffs' claim (Compl. ¶¶ 12-15) in accordance with 28 U.S.C. § 2401.

[3]     *See* Docket Entry No. 49 (Reply Memorandum of Law in Further Support of Plaintiff's Motion for Summary Judgment ("Pl. Reply") at 19, 23) (Plaintiff's "summary judgment motion is based on [plaintiff's] § 205-e claim" and "[p]laintiff did not move for summary judgment on his negligence claim").

Summary Judgment")], which is opposed only by defendant U.S. [Docket Entry No. 39] and not by defendant Fludd. For the reasons set forth below, plaintiff's Motion for Summary Judgment is denied as to defendant U.S. and granted as to defendant Fludd.

I. BACKGROUND[4]

1. The Accident

On October 2, 2012, at approximately 11:35 a.m. on Route 878, approximately 1,000 feet south of Rock Hall Road in the Village of Lawrence in Nassau County, New York, plaintiff, while working in the course of his official duties as a Nassau County police officer, was involved in an accident with defendants' motor vehicles. Compl. ¶ 30-35; Pl. 56.1 Stmt. ¶¶ 1-2, 37; [Docket Entry No. 42-5 (Gereg Decl., Ex. E (Deposition of Domenick Stanganelli ("Pl. Dep.")), at 5, 46)]. The accident occurred approximately one-eighth (1/8) of a mile north of where the roadway merged into two northbound lanes. Pl. 56.1 Stmt. ¶ 90; Docket Entry No. 42-6 (Gereg Decl., Ex. F (Deposition of Justin Eckert ("Eckert Dep.")), at 65).

2. Plaintiff

At the time of the accident, plaintiff was on duty, performing car stops for speeding vehicles. Pl. 56.1 Stmt. ¶ 38; Pl. Dep., at 37, 47. Traffic enforcement was part of plaintiff's work duties and he used a radar gun to assist with traffic enforcement. Pl. 56.1 Stmt. ¶¶ 40-41; Pl. Dep. at 25, 30. Plaintiff testified that on the morning of the accident, he left his precinct at approximately 8:00 a.m. and proceeded to Route 878 in Lawrence to perform speed enforcement

---

[4] The facts are taken from the undisputed assertions set forth in plaintiff's Rule 56.1 Statement of Material Facts ("Pl. 56.1 Stmt.") [Docket Entry No. 44], the Gereg Aff. and the attached exhibits [Docket Entry Nos. 42-1-42-12], the U.S. Defendants' Counter-Statement to Plaintiff's Rule 56.1 Statement of Material Facts and Rule 56.1 Statement of Additional Facts ("Def. Resp. to Pl. 56.1 Stmt.") [Docket Entry No. 46], the affirmation of Diane C. Leonardo in opposition to plaintiff's motion for summary judgment ("Leonardo Aff.") and the attached exhibits [Docket Entry No. 45], and my review of the record.

work on Route 878, where he had performed speed enforcement at least three (3) prior times. Pl. 56.1 Stmt. ¶¶ 51-52; Pl. Dep., at 49, 51. Plaintiff testified that, upon arriving at the general area between 8:00 a.m. and 8:30 a.m., he formulated a mental checklist of all issues which would be potentially addressed in court if his findings were challenged, ensured the speed limit sign was visible to anyone passing it, and drove the same path that potential violators would be driving. Pl. 56.1 Stmt. ¶¶ 53-56; Pl. Dep., at 49-50. Plaintiff further testified that after performing an internal calibration test on the radar unit and calibrating and focusing the unit using a tuning fork, he began monitoring speeds. Pl. 56.1 Stmt. ¶¶ 57-60; Pl. Dep., at 55-56. Plaintiff testified that the radar was not used to determine the violator's speed, but rather was used to confirm plaintiff's estimate of the violator's speed of travel. Pl. 56.1 Stmt. ¶ 68; Pl. Dep., at 57-58. Plaintiff testified that if the radar unit is aimed at a group of vehicles, it will give an officer two different readings and that if two cars are traveling in the same lane, the radar will capture the first vehicle, but not the cars behind it. Def. Resp. to Pl. 56.1 Stmt. ¶¶ 131-32; Pl. Dep., at 62, 64. The radar device used by plaintiff on October 2, 2012 did not provide printouts of vehicle speeds that it captured. Def. Resp. to Pl. 56.1 Stmt. ¶ 129; Pl. Dep., at 58.

Plaintiff testified that to capture speeding motorists he used a method referred to as "step out" in which the police officer is stationary and the speeding vehicle is coming towards the police officer. Pl. 56.1 Stmt. ¶¶ 70-71, Pl. Dep., at 37. Plaintiff testified that he would monitor the speeds from a position in front of his car, which was parked on the shoulder of the roadway, and then would step into the roadway to wave a speed violator to pull over. Pl. 56.1 Stmt. ¶¶ 61, 63-65; Pl. Dep., at 56, 60, 69, 76-77 & Ex. A; Docket Entry No. 42-9 (Gereg Decl., Ex. I (Photographs)). Plaintiff testified that the lights and sirens of his patrol car were not on continuously when the car was on the shoulder but would be turned on periodically when

plaintiff pulled someone over. Pl. 56.1 Stmt. ¶¶ 62, 67; Pl. Dep., at 61. Plaintiff further testified that immediately prior to being hit, the lights and sirens of his vehicle were not on. Pl. Dep., at 61. Plaintiff testified that from the time he arrived at the scene until just prior to the accident, he issued twelve (12) to fifteen (15) speeding tickets. Pl. 56.1 Stmt. ¶ 78; Pl. Dep. at 53.

3. Eckert

On October 2, 2012, Eckert was operating a Chevrolet Equinox motor vehicle bearing New York State license plate number EXN9889 (the "Equinox" or "Eckert's vehicle") with the knowledge, consent and/or permission of the DOJ/DEA, the registered owner of the vehicle. Pl. 56.1 Stmt. ¶¶ 8-9, 12; Compl. ¶¶ 20, 22-24; Docket Entry No. 42-3 (Gereg Aff., Ex. C ("Def. U.S. Answer") ¶¶ 20, 22-24); Eckert Dep., at 17-18. Prior to the accident, Eckert had driven for approximately ten (10) minutes from his home to the Atlantic Beach bridge, then passed through the tollbooth located after the bridge, and intended to head towards the Belt Parkway. Pl. 56.1. Stmt. ¶¶ 79-80; Eckert Dep., at 43, 57-58. Eckert testified that the traffic conditions were "medium" as he crossed the Atlantic Bridge and until the time of the accident. Def. Resp. to Pl. 56.1 Stmt. ¶¶ 160, 164; Eckert Dep., at 54, 61, 83. After the tollbooth, Eckert proceed to the leftmost lane. Pl. 56.1. Stmt. ¶ 86; Eckert Dep., at 60. Eckert accelerated as he was traveling from the tollbooths to the point where the roadway merged into two northbound lanes. Pl. 56.1 Stmt. ¶ 89; Eckert Dep., at 62.

Eckert testified that he not know what the speed limit was in that area or the highest posted speed on the roadway, but knew that it changed multiple times before reaching the Belt Parkway. Pl. 56.1. Stmt. ¶¶ 80, 92. 161; Eckert Dep., at 54, 57-58, 70. Eckert was not sure what his highest rate of speed was while traveling from the tollbooths to the point where the roadway merged to two northbound lanes and did not recall looking at his dashboard to approximate his

speed. Pl. 56.1 Stmt. ¶¶ 88, 93; Eckert Dep., at 62, 71. Eckert testified that he did not know if posted speed limit signs applied to federal officers. Pl. 56.1 Stmt. ¶ 94; Eckert Dep., at 87. A speed limit sign located approximately one quarter (1/4) of a mile south of the accident scene indicated the speed limit was thirty (30) miles per hour, the village speed limit. Pl. 56.1 Stmt. ¶¶ 82-84; Pl. Dep., at 75-76. Eckert testified that his foot was on the gas pedal until he saw the car in front of him slowing down, at which point, he started to slow down and noticed plaintiff waiving his hands in the air high over his head from side to side though Eckert did not know why plaintiff was waiving his hands. Pl. 56.1 Stmt. ¶¶ 97, 99-101; Eckert Dep., at 72-73, 106. Eckert testified that as he stepped on his brakes and was slowing down in the left lane, his vehicle was hit in the rear by Fludd's vehicle. Pl. 56.1 Stmt. ¶ 111; Def. Resp. to Pl. 56.1 Stmt. ¶¶ 147, 176-178; Fludd Dep., at 12; Eckert Dep., at 74-76, 77, 79.

  4.  Fludd

On October 2, 2012, Fludd was operating a 2004 Audi A-8 (the "Audi" or "Fludd's vehicle") on Route 878. Def. Resp. to Pl. 56.1 Stmt. ¶ 139; Docket Entry No. 42-7 (Gereg Decl., Ex. G (Deposition of Charles Fludd ("Fludd Dep.")), at 6, 8). After merging onto 878, Fludd was behind a white "box truck" in the right lane. Def. Resp. to Pl. 56.1 Stmt. ¶ 140; Fludd Dep., at 11. Fludd testified that he was "speeding up" to get on the highway when he first entered Route 878 and that as he got closer to the box truck, the box truck started to slow down. Def. Resp. to Pl. 56.1 Stmt. ¶ 149; Fludd Dep., at 17. Fludd merged into the left lane and started to pass the box truck as it slowed down and as he was passing it, he noticed a grey Equinox stopped in the highway in the left lane. Def. Resp. to Pl. 56.1 Stmt. ¶¶ 141-42; Fludd Dep., at 11. Fludd testified that when he passed the box truck, he could not see the Equinox because it was stopped at a curve, and could not see what was on the other side of the curve until he got around the box

5

truck. Def. Resp. to Pl. 56.1 Stmt. ¶¶ 148, 150; Fludd Dep., at 12, 18, 24. Fludd testified that the first time he saw the Equinox, it was stopped in the left lane, and that while he was behind the box truck, he was unable to see the Equinox or any traffic in the left lane. Def. Resp. to Pl. 56.1 Stmt. ¶¶ 151-52; Fludd Dep., at 24-25. The grey Equinox did not move at all and Fludd swerved back into the right lane to avoid hitting the Equinox. Pl. 56.1 Stmt. ¶ 106; Def. Resp. to Pl. 56.1 Stmt. ¶¶ 143-44; Fludd Dep., at 11-13, 25. Fludd testified that he thought he cut off the box truck in order to avoid hitting the Equinox. Def. Resp. to Pl. 56.1 Stmt. ¶ 155; Fludd Dep., at 28. As Fludd swerved into the right lane, he nicked the Equinox and then plaintiff. Pl. 56.1 Stmt. ¶ 107; Fludd Dep., at 12-13.

Fludd testified that he observed a police officer in the right lane "jumping up and down" (Def. Resp. to Pl. 56.1 Stmt. ¶ 145; Fludd Dep., at 12), but that he did not see the police officer in the road until he was about to hit him. Def. Resp. to Pl. 56.1 Stmt. ¶ 154; Fludd Dep., at 25. Fludd testified that he thought the driver of the Equinox and the police officer were working together to stop the box truck. Def. Resp. to Pl. 56.1 Stmt. ¶ 157; Fludd Dep., at 29. Fludd testified that was traveling at forty (40) to forty-five (45) miles per hour when he saw the police officer. Def. Resp. to Pl. 56.1 Stmt. ¶ 146; Pl. 56.1 Stmt. ¶¶ 108-09; Fludd Dep., at 12-13. As Fludd jumped into the right lane, he appeared to increase speed, and then struck plaintiff, throwing him up high in the air and very far to the right and north. Pl. 56.1. Stmt. ¶¶ 113-14; Pl. Dep., at 68; Eckert Dep., at 79-80.

5. Plaintiff's Injuries

Plaintiff testified that as a result of the accident, he fractured his skull and C-2 vertebrae and suffered a traumatic brain injury necessitating a medically induced coma from October 2, 2012 through November 9, 2012. Pl. 56.1 Stmt. ¶ 116; Pl. Dep., at 126-142. He testified that he

lost reading ability in both eyes, peripheral vision in his right side, the ability to hear certain tones and a significant degree of his sense of smell; and that he also suffered severe herniations at C4 through C6, a compound fracture of his left arm requiring internal fixation hardware, crush injury to his right leg below the knee resulting in a permanent dropfoot and requiring surgical intervention and a future knee replacement. *Id*. He testified that the accident also caused extensive internal injuries, abdominal lacerations requiring surgical intervention, extensive damage to his pelvic area including his bladder/urethra and loss of sensation in his penis requiring surgical intervention and insertion of hardware. *Id*.

II. DISCUSSION

    A. Standard of Review

"Summary judgment must be granted where the pleadings, the discovery and disclosure materials on file, and any affidavits show 'that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks and citation omitted). "A fact is material if it might affect the outcome of the suit under the governing law, and an issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 558 (2d Cir. 2012) (internal quotation marks omitted); *see also Dalberth v. Xerox Corp.*, 766 F.3d 172, 182 (2d Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91

7

L.Ed.2d 202 (1986)). "Summary judgment is appropriate when 'the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Smith v. Cnty. of Suffolk*, 776 F.3d 114, 121 (2d Cir. 2015) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

"The moving party bears the burden of establishing the absence of any genuine issue of material fact." *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010). If the moving party satisfies its initial burden, "the burden shifts to the non-movant to point to record evidence creating a genuine issue of material fact." *Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006). "A party opposing summary judgment does not show the existence of a genuine issue of fact to be tried merely by making assertions that are conclusory…or based on speculation." *Katel Ltd. Liability Co. v. AT & T Corp.*, 607 F.3d 60, 67 (2d Cir. 2010) (quotations and citation omitted); *see also Brown*, 654 F.3d at 358 (non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts and may not rely on conclusory allegations or unsubstantiated speculation" to defeat summary judgment) (internal citations omitted); *Niagara Mohawk Power Corp. v. Jones Chem*., Inc., 315 F.3d 171, 175 (2d Cir. 2003) ("Conclusory allegations, conjecture, and speculation...are insufficient to create a genuine issue of fact.") (quotations and citation omitted). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (quoting *Anderson*, 477 U.S. at 252) (alterations in original).

B. Applicable Law

1. FTCA

The FTCA authorizes "claims against the United States, for money damages...for...injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). The FTCA "remove[s] the sovereign immunity of the United States from suits in tort, and, with certain exceptions, render[s] the Government liable in tort as a private individual would be under like circumstances." *Richards v. United States*, 369 U.S. 1, 6, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962). "Under the FTCA, courts are bound to apply the law of the state...where the accident occurred." *Makarova v. United States*, 201 F.3d 110, 114 (2d Cir. 2000).

2. New York General Municipal Law Section 205-e

"General Municipal Law § 205-e contains a right of action allowing police officers to sue for injuries sustained in the line of duty 'as a result of any neglect, omission, willful or culpable negligence of any person or persons in failing to comply with the requirements of any of the statutes, ordinances, rules, orders and requirements of the federal, state, county, village, town or city governments.'" *Gammons v. City of New York*, 24 N.Y.3d 562, 567-68, 25 N.E.3d 958, 961 (2014) (citing Section § 205-e(1)). "In order to assert a claim under General Municipal Law § 205–e, a plaintiff 'must [1] identify the statute or ordinance with which the defendant failed to comply, [2] describe the manner in which the [police officer] was injured, and [3] set forth those facts from which it may be inferred that the defendant's negligence directly or indirectly caused

the harm." *Gammons*, 24 N.Y.3d at 570 (citing *Williams v. City of New York*, 2 N.Y.3d 352, 363, 811 N.E.2d 1103 (2004) (internal quotation marks and citations omitted)). "In order to recover under General Municipal Law § 205-e '[the] police officer must demonstrate [an] injury resulting from negligent noncompliance with a requirement found in a well-developed body of law and regulation that imposes clear duties.'" *Gammons*, 4 N.Y.3d at 571 (citing *Williams*, 2 N.Y.3d at 364 (citing *Galapo v. City of New York*, 95 N.Y.2d 568, 574, 721 N.Y.S.2d 857, 744 N.E.2d 685 (2000))). "[T]o make out a claim under GML §§ 205-a and 205-e, "a plaintiff is not required to show the same degree of proximate cause as is required in a common-law negligence action…[r]ather, the substantial case law that has developed on the subject holds that a plaintiff need only establish a practical or reasonable connection between the statutory or regulatory violation and the claimed injury.'" *Breitkopf v. Gentile*, 41 F. Supp. 3d 220, 264 (E.D.N.Y. 2014) (citing *Giuffrida v. Citibank Corp.*, 100 N.Y.2d 72, 81, 790 N.E.2d 772, 760 N.Y.S.2d 397 (2003) (internal quotation marks and citation omitted)).

    C.      Plaintiff's Claims Against Defendants Eckert, DOJ and DEA

Defendant U.S. argues that defendant Eckert, as an employee of the United States, may not be sued personally, and that the DOJ and DEA may not be sued *eo nomine*. Docket Entry No. 47 (Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment ("Def. Opp."), at 1 n.1). Because Eckert, who was working within the scope of his employment as an employee of the United States at the time of the accident (Pl. 56.1 Stmt. ¶ 5; Def. U.S. Answer), may not be sued in his individual capacity, and because Congress has not authorized suits under the FTCA against the DOJ and DEA, plaintiff's FTCA claim against defendants Eckert, DOJ, and DEA must be dismissed. *See Mignogna v. Sair Aviation*, 937 F.2d 37, 40 (2d Cir. 1991) ("action [under FTCA] must be brought against the United States rather

10

than an agency thereof"); *Parker v. United States*, No. 05-civ-5324, 2006 WL 3378684, at *4 (S.D.N.Y. Nov. 15, 2006) (finding that DEA and DOJ, among other agencies, were "not proper parties" as "[t]he FTCA only authorizes suits against the United States but not against federal agencies and federal officials acting in their official capacities") (internal quotation marks and citations omitted); *Barnes v. United States*, No. 00-civ-3544, 2004 WL 957985, at *2 (E.D.N.Y. Apr. 12, 2004), *aff'd*, 204 F. App'x 918 (2d Cir. 2006) (dismissing FTCA claims against federal agencies and federal official acting in his official capacity).

    D.    Plaintiff's Section 205-e Claim Against the U.S.

        1.    Sovereign Immunity

The U.S. argues that plaintiff's Section 205-e claim must be dismissed for lack of subject matter jurisdiction because Section 205-e is a strict liability statue and the federal government has not waived sovereign immunity for strict liability claims. Def. Opp., at 4-8. Plaintiff argues that although Section 205-e "is 'categorized' as a strict liability statute, it does not truly impose strict liability, 'because it explicitly requires some level of culpability on the part of defendant.'" [Docket Entry No. 43 (Plaintiff's Memorandum of Law in Support of Plaintiff's Summary Judgment Motion ("Pl. Mem."), at 7) (internal citations omitted)].

"The FTCA….constitutes a limited waiver by the United States of its sovereign immunity" allowing for a tort suit against the United States under specified circumstances. *Millares Guiraldes de Tineo v. United States*, 137 F.3d 715, 719 (2d Cir. 1998). The United States' sovereign immunity is waived if a claim meets six requirements – it must be:

> [1] against the United States, [2] for money damages, ... [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with

11

the law of the place where the act or omission occurred.

*Hamm v. United States*, 483 F.3d 135, 137 (2d Cir. 2007) (quoting *FDIC v. Meyer*, 510 U.S. 471, 477, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994) (internal quotation marks omitted) (modification in original)). While the FTCA provides the federal government's consent to be sued "for negligent actions or omissions by the government and its actors…its waiver is limited; it precludes from its waiver strict liability claims." *Taylor v. United States*, No. 08-civ-2244, 2010 WL 436932, at *5 (D. Md. Feb. 1, 2010)) (citing 28 U.S.C. § 2680(a)). The FTCA exempts claims "based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation…." 28 U.S.C. § 2680(a). "The FTCA was designed to allow tort suits against the government based on the government's lack of due care—its negligence—and the FTCA waiver language of "act or omissions" and "due care" speaks specifically to a negligence analysis…Strict liability is neither based in negligent acts nor omissions, and therefore it remains a viable and complete defense for Defendant under the FTCA." *Taylor*, 2010 WL 436932, at *6 (citing 28 U.S.C. § 2680(a)). "Federal courts do not have subject matter jurisdiction over claims falling within one of the exceptions to the FTCA's waiver of sovereign immunity." *Haber v. United States*, No. 10-civ-5443, 2012 WL 92499, at *4 (E.D.N.Y. Jan. 10, 2012).

Section 205-e has been referred to as imposing "a form of absolute liability which omits the assumption of risk and comparative negligence defenses" (*Wedlock v. Troncoso*, 185 Misc. 2d 432, 441, 712 N.Y.S.2d 328 (Sup. Ct. 2000)) because "certain defenses normally available in a common-law tort action have no application to claims made pursuant to General Municipal Law § 205-a." *Lusenskas v. Axelrod*, 183 A.D.2d 244, 248 (App. Div. 1st Dept. 1992). This has led some courts to note that "[t]o this extent, liability may be said to be strict." *Id*. However, while General Municipal Law 205-e protects police offers "from some common law defenses, []
12

it still requires a proof of negligence or other culpable wrongdoing." *Virgilio v. Motorola, Inc.*, 307 F. Supp. 2d 504, 519 (S.D.N.Y. 2004) (Section 205-a creates "an entitlement to sue parties whose 'neglect, omission, willful, or culpable negligence' results in the injury or death of a firefighter.") (citing N.Y. Gen. Mun. Law § 205–a(1)[5]). As the New York Court of Appeals has noted, Section 205-e manifests the "the legislative goal of providing a cause of action for police officers for *negligent* noncompliance with the law." *Gammons*, 24 N.Y.3d at 569 (emphasis added) (noting that the legislative intent of Section 205-e was "to offer an umbrella of protection for police officers, who, in the course of their many and varied duties, are injured by the negligence of anyone who violates any relevant statute, ordinance, code, rule and/or regulation") (citing L. 1996, ch. 703, § 1). The Second Circuit has also indicated that Section 205-e "permit[s] officers to recover for injuries that result from someone's *negligence* in 'failing to comply with the requirements of any of the statutes, ordinances, rules, orders and requirements of the federal, state, county, village, town or city governments.'" *Madonna v. Am. Airlines, Inc.*, 82 F.3d 59, 62 (2d Cir. 1996) (citing Section 205-e(1)) (emphasis added). Defendant U.S. "is incorrect in stating that General Municipal Law § 205-e is a strict liability statute, because it explicitly requires some level of culpability on the part of Defendant." *Touri v. Zhagui*, No. 06-civ-00776, 2010 WL 779335, at *6 (S.D.N.Y. Mar. 5, 2010) (citing *Lusenkas*, 183 A.D.2d at 248).[6] Therefore, the Court has subject matter jurisdiction over plaintiff's Section 205-e claim against defendant U.S. under the FTCA.

---

[5] Because Section 205-e "essentially tracked the language of General Municipal Law § 205-a [and] was intended to be identical to that statute…wherever practical and sensible, sections 205-a and 205-e should be construed and applied in the same way." *Desmond v. City of New York*, 88 N.Y.2d 455, 463, 669 N.E.2d 472, 476 (1996) (internal citations omitted)

[6] *See also Desthers v. Espinal*, 121 A.D.3d 1035, 1036-37, 995 N.Y.S.2d 177 (App. Div. 2d Dept. 2014), *leave to appeal denied*, 25 N.Y.3d 908, 32 N.E.3d 965 (2015) (Section 205-a "requires that the circumstances surrounding the violation indicate that it was a result of neglect, omission, willful or

### 2. Predicate Statutory Violations for Section 205-e Claim

In order to state a claim under Section 205-e, a plaintiff must "identify the statute or ordinance with which defendant failed to comply." *Gammons*, 24 N.Y.3d at 570 (citing *Williams*, 2 N.Y.3d at 363 (internal quotation marks and citations omitted). Plaintiff bases his Section 205-e claim on various violations of New York's Vehicle and Traffic Law ("VTL"), but argues for summary judgment primarily based upon Eckert's purported violations of VTL § 1180 (speeding)[7] and VTL § 1110 (failure to obey traffic laws).[8] Pl. Reply, at 9 ("Plaintiff has identified through admissible evidence sections of New York's VTL which Eckert violated and were not contradicted by evidence [VTL 1180 – speeding and VTL 1100 – failure to obey traffic laws]."). Defendant U.S. does not contest that violations of VTL §§ 1180 and 1110, the sections upon which plaintiff bases his Section 205-e claim, may serve as predicate violations for a Section 205-e claim, and New York courts have allowed Section 205-e claims predicated upon

---

culpable negligence on the defendant's part"); *Alexander v. City of New York*, 82 A.D.3d 1022, 1024-25, 920 N.Y.S.2d 148 (App. Div. 2d Dept. 2011) (plaintiff asserting a claim under Section 205-a or 205-e must establish that "the circumstances surrounding the violation indicate that it was a result of neglect, omission, willful or culpable negligence on the defendant's part") (internal citations and quotation marks omitted); *Wedlock*, 185 Misc. 2d at 438 (under Section 205-e and 205-a, "the burden is upon firefighters or police officers to prove that their injuries were practically and reasonably connected to a violation by the defendant of a statute or code. The plaintiff must also prove the injury was caused by the negligence of the defendant.") (internal citations and quotation marks omitted).

[7] *See* VTL § 1180(d)("Except as provided in subdivision (g) of this section, whenever maximum speed limits, other than school speed limits, have been established…no person shall drive in excess of such maximum speed limits at any time."); VTL § 1180(a) ("No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing.").

[8] While plaintiff cites VTL § 1100, which provides, *inter alia*, that "[t]he provisions of this title apply upon public highways, private roads open to public motor vehicle traffic and any other parking except, except where a different place is specifically referred to in a given section" (VTL § 1100), the appropriate statutory section for a charge of failure to comply with a traffic control signal is VTL § 1110, which is entitled "Obedience to and required traffic-control devices." *See People v. Christensen*, 77 A.D.3d 174, 181, 906 N.Y.S.2d 301 (App. Div. 2d Dept. 2010) (describing guilty plea to "violating VTL 1110(a), in that she had "failed to comply with a speed sign").

these sections. *Dubois v. Vanderwalker*, 245 A.D.2d 758, 760, 665 N.Y.S.2d 460, 462 (App. Div. 3d Dept 1997) (Section 205-e claims based upon alleged violations of VTL § 1180, among other sections); *Zillas v. City of New York*, 15 Misc. 3d 1114(A), 839 N.Y.S.2d 438 (Sup. Ct. 2007) (Section 205-e claim based upon VTL §§ 1110(a), 1180, among other sections); *Walsh v. City of New York*, 36 Misc. 3d 1229(A), 959 N.Y.S.2d 93 (Ct. Cl. 2012) (granting plaintiff leave to amend to add a Section 205-e claim based upon violations of VTL §§ 1180(a), 1140).

Plaintiff argues that he has submitted sufficient evidence to prove that Eckert was speeding, in violation of the VTL, and that the government failed to meet its burden to oppose this evidence. *See* Pl. Reply, at 9 ("Eckert's testimony read in conjunction with Plaintiff's and Fludd's leaves no doubt that it was Eckert's SUV Plaintiff caught speeding and was in the process of flagging down when this accident occurred."). The evidence submitted by plaintiff – his own deposition testimony – establishes that plaintiff was attempting to pull over a dark-colored SUV which, according to his visual estimates and radar, was speeding at a rate of between fifty-three (53) miles per hour and fifty-five (55) miles per hour and was the lead car in the left lane. Pl. Dep., at 64-65.

Eckert testified that there was a cream-colored sedan in front of him just prior to the accident (Eckert Dep., at 57) raising a triable issue of fact as to which vehicle's speed was captured by plaintiff's radar as traveling fifty-three (53) miles per hour, given plaintiff's testimony that if there are two cars in the same lane, the radar captures the car that is hitting first. Pl. Dep., at 64. Because there is no print-out from the radar gun plaintiff was using the day of the accident (*id*., at 58), the only evidence that plaintiff has put forward to demonstrate Eckert's alleged speeding violation is plaintiff's testimony that he observed a dark-colored SUV speeding at fifty-five (55) miles per hour. While, in certain circumstances, a police officer's testimony

15

"that he had visually estimated the speed of defendant's vehicle to…exceed[] the speed limit by 20 miles per hour, [is] alone sufficient to establish defendant's guilt beyond a reasonable doubt" for a VTL § 1180 speeding violation (*People v. Giaccio*, 42 Misc. 3d 127(A), 983 N.Y.S.2d 205 (Sup. Ct. App. Term 2d Dept. 2013) (citing *People v. Olsen*, 22 N.Y.2d 230, 232 (1968))), defendant U.S. has raised a material issue of fact as to whether it was Eckert's vehicle that plaintiff visually estimated as traveling in excess of the posted speed limit. Eckert did not admit to speeding but rather testified that he did not remember the highest rate of speed at which he was traveling but was driving with the flow of traffic. Eckert Dep., at 70-71. Defendant U.S. also put forth evidence that there were other dark-colored SUVs on Route 878 at or near the same time as Eckert's vehicle on the day of the accident. Docket Entry No. 45-2 (Leonardo Aff., Ex. 2 (Compact Disc of Tollbooth Video Surveillance)). This evidence, combined with the fact that plaintiff could not identify the driver of the vehicle he was attempting to pull over (Pl. Dep., at 154-55) raises at least a triable issue of fact as to whether Eckert's dark-colored SUV was the vehicle that plaintiff observed speeding.

Moreover, whether Eckert violated the VTL "depends on whose version of the facts is true" (*Noel v. Cnty. of Nassau*, No. 11-civ-5370, 2015 WL 541461, at *6 (E.D.N.Y. Feb. 7, 2015) (dispute between officer who "claim[ed] he estimated Plaintiff's speed at approximately sixty-five miles per hour" and plaintiff who "dispute[d] that he was speeding" involved a "factual dispute" that the Court "cannot resolve…on a motion for summary judgment") and implicates credibility issues as to the testimonies of plaintiff and Eckert, which cannot be resolved on a motion for summary judgment. *See Curry v. City of Syracuse*, 316 F.3d 324, 333 (2d Cir. 2003) ("It is well established that credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on

a motion for summary judgment.") (internal quotations, alterations and citations omitted). Drawing all reasonable inferences in favor of defendant U.S. and eschewing credibility assessments (*see Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004)), there is a genuine issue of material fact as to whether Eckert violated the VTL, precluding summary judgment to plaintiff on his Section 205-e claim against defendant U.S. *See Bermudez v. City of New York*, 66 A.D.3d 724, 725, 887 N.Y.S.2d 221 (App. Div. 2d Dept. 2009) (reversing trial court's granting of summary judgment to plaintiff on Section 205-e cause of action based on defendant's alleged violation of VTL § 1172(a) where "a triable issue of fact was raised as to whether [defendant] committed any traffic violation").

E. Plaintiff's Section 205-e Claim Against Fludd[9]

As noted *supra*, "to assert a claim under General Municipal Law § 205-e, a plaintiff 'must [1] identify the statute or ordinance with which the defendant failed to comply, [2] describe the manner in which the [police officer] was injured, and [3] set forth those facts from which it may be inferred that the defendant's negligence directly or indirectly caused the harm." *Gammons*, 24 N.Y.3d at 570 (citing *Williams*, 2 N.Y.3d at 363) (internal quotation marks and citations omitted). It is undisputed that at the time of the accident, Fludd was traveling in excess of the thirty (30) mile per hour speed limit in violation of VTL § 1180 (*see* Pl. 56.1 Stmt. ¶¶ 24-25; Docket Entry No. 42-8 (Gereg Decl., Ex. H (Fludd Statement), at 3 ("We were traveling at about forty miles an hour"); Fludd Dep., at 12 ("I was going like 40, 45")), which establishes the first element of plaintiff's Section 205-e claim. *See People v. Cepeda*, 33 Misc. 3d 1212(A), 939

---

[9] Defendant Fludd has not opposed plaintiff's Motion for Summary Judgment and therefore the Court deems admitted all material facts contained in Pl. 56.1 Stmt. as to Fludd. *See Gubitosi v. Kapica*, 154 F.3d 30, 31 n.1 (2d Cir. 1998) (deeming admitted all material facts contained in an unopposed Rule 56.1 statement).

N.Y.S.2d 742 (Sup. Ct. 2011) ("A violation of VTL 1180 occurs when a motorist drives 10 or more miles per hour over the speed limit"). Plaintiff has also described the manner in which he was injured (*see* Pl. 56.1 Stmt. ¶¶ 113-14 (Fludd's vehicle "jumped into the right lane, appeared to increase speed and hit Plaintiff…throwing him up high in the air and very far to the right and north"), *id.* ¶¶ 116-21 (describing plaintiff's injuries)), satisfying the second prong of a Section 205-e claim. Finally, plaintiff has set forth those facts from which it may be inferred that Fludd's negligence directly or indirectly caused the harm. *See* Pl. 56.1 Stmt. ¶¶ 113-14 (Fludd's vehicle "jumped into the right lane, appeared to increase speed and hit Plaintiff…throwing him up high in the air and very far to the right and north"); Docket Entry No. 42-11 (Gereg Decl., Ex. K (Affidavit of Baruch Toledano, MD) ¶ 3 (describing plaintiff's injuries and treatment for such injuries "that he sustained as the result of being struck by a motor vehicle on October 2, 2012"). Therefore, summary judgment is granted as to plaintiff's Section 205-e claim against defendant Fludd.

III. CONCLUSION

For the foregoing reasons, the claim of plaintiff Michelle Stanganelli is deemed withdrawn, defendants Eckert, DOJ and DEA are dismissed from the action, and plaintiff's Motion for Summary Judgment is denied as to defendant U.S. and granted as to defendant Fludd.

**SO ORDERED.**

s/ Sandra J. Feuerstein
Sandra J. Feuerstein
United States District Judge

Dated: August 3, 2015
      Central Islip, New York